356 S.E.2d 620

**Teresa E. CRISS**

v.

**Charles CRISS.**

No. 17222.

Supreme Court of Appeals of
West Virginia.

April 14, 1987.

Laverne Sweeney, Grafton, for appellant.

Daniel Lane, Clarksburg, for appellee.

McGRAW, Chief Justice:

The appellant, Teresa E. Criss, instituted a civil action against her estranged husband, Charles Criss, seeking $20,000 in compensatory damages and $20,000 in punitive damages. The appellant alleged in her complaint that the appellee entered her residence on August 20, 1983 and sexually assaulted her. She sought recovery based on two legal theories. First, that the appellee wilfully, wantonly and intentionally assaulted and battered her. Second, that the appellee's conduct was outrageous and that he intentionally inflicted emotional distress upon her. Following the presentation of all of the appellant's evidence before a jury in the Circuit Court of Taylor County, the trial judge directed a verdict in favor of the appellee.[1] Based on our review of the record, we conclude that the trial court's order was incorrect, and we reverse its decision.

## I.

■ Briefly, the appellant's evidence reveals the following events and circumstances.[2] The appellant and the appellee were not living together at the time. The appellee lived with his parents, while appellant stayed in the couple's former marital residence. Custody of their only daughter was alternated between them every two days. On August 20, 1983, the appellee came to the appellant's residence to get his daughter. After the appellee and his daughter left, the appellant went to a local tavern with friends. At the tavern she received a telephone call from the appellee telling her to return home immediately.

When the appellant returned to her residence the appellee was there alone waiting on her. He locked and chained the door after she entered; he demanded that she give him her car keys; he demanded that she take her clothes off; and he began ripping her shirt. The appellant initially refused to remove her clothes, but did so after the appellee threatened her with a hunting knife.[3] She was then forced to engage in sexual intercourse with him, during which she was "just crying and telling him to please stop." Afterwards, the appellee made the appellant take a bath in cold water to remove evidence of the sexual assault.[4] The appellant's testimony detailed several other actions on the part of the appellee immediately after the assault which provided evidence of indignity and humiliation.

The appellant called her grandmother as soon as the appellee was gone. Her grandmother came and took the appellant to the city police station in Grafton. The appellant subsequently obtained a domestic violence order from a magistrate. As a result of these events, the appellant moved out of the house and lived with another family for approximately two months. The appellant testified at trial that she had been frightened by her husband's conduct and was afraid to stay in the house. The appellant's grandmother testified that the appel-

1. The relevant portion of the trial court's order reads as follows: "At the conclusion of the plaintiff's case, the jury was excused and the defendant, by counsel, moved for a directed verdict. After hearing arguments of counsel for both the plaintiff and defendant pertinent to said Motion, the Court granted the same and directed a verdict in favor of the defendant." Although the grounds for the appellee's motion are not recited in the trial court's order and are not otherwise included in the record on appeal, both parties state in their briefs that the trial court granted the motion for a directed verdict based on insufficient evidence with respect to damages.

2. We take all of the appellant's evidence as proven. In Syllabus Point 5 of *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), we stated the rule that: "Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed."

3. The hunting knife was introduced into evidence at the trial. According to the appellant's testimony, the appellee kept the knife's handle wrapped in their daughter's pajamas. He told the appellant that this would prevent her from proving that anything had happened.

4. Because the appellant was unable to pay all of her bills, the gas supply to the house had been shut off sometime in July of 1983. As a result, water for bathing had to be heated over the electric stove in the kitchen. The appellant testified that the appellee forced her to bathe without allowing her to heat the water.

lant had told her what had happened and that the appellant was "very upset."

## II.

Considering the facts and all reasonable inferences in favor of the appellant, the nonmoving party, we find that the evidence presented by the appellant shows a proper case for jury determination.

■ "Under West Virginia law in an action to recover for an intentional tort, as opposed to a negligent tort, a plaintiff is entitled to have such elements as mental anguish, insult, indignity, and humiliation considered by the jury in arriving at an award for actual damages." *Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 454, 211 S.E.2d 674, 693 (1975), *cert. denied*, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975), *reh'g denied*, 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (1975). *See also Nees v. Julian Goldman Stores, Inc.*, 109 W.Va. 329, 154 S.E. 769 (1930); *Lambert v. Brewster*, 97 W.Va. 124, 125 S.E. 244 (1924). In this case, the appellant has brought forward sufficient evidence of an assault and battery and resulting emotional distress. The appellant's testimony in substance relates her experiencing fright and emotional distress as a result of her husband's sexual assault upon her and his subsequent actions. Additionally, her grandmother's testimony is further evidence that the appellant experienced emotional distress as a result of the appellee's conduct.

■ The mental anguish resulting from such an assault and battery can be devastating. One court has noted, "[t]he emotional consequences of sexual assault are acutely disabling and chronically debilitating in many if not most victims." *Mindt v. Shavers*, 214 Neb. 786, 792, 337 N.W.2d 97, 101 (1983) (quoting Hicks, *Rape: Sexu-*

*al Assault*, 137(8) Am.J. of Obstetrics and Gynecology 931, 932–33 (August 15, 1980)). Although the appellant's claim for damages for emotional distress would have been strengthened by supporting medical or psychological evidence, the testimony offered by the appellant and her grandmother was sufficient to raise issues for jury determination. *See* W.Va.R.Evid. 701 and 702. *See also Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974); *Curfman v. Monongahela West Penn Public Service Co.*, 113 W.Va. 85, 166 S.E. 848 (1932). Accordingly, if a jury finds that the proof sustains her claim of assault, compensatory damages may be recovered for the resulting emotional distress.[5]

■ The appellant's other theory of recovery is the tort of outrage. In Syllabus Point 6 of *Harless v. First Nat. Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982), we recognized the tort of outrage as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." At the same time, we noted that "[a] plaintiff may not recover damages twice for the same injury simply because has two legal theories." *Id.* at Syl. Pt. 7. In the present case, the claim for the tort of outrageous conduct is duplicitous of the claim for assault and battery. As noted above, if a jury finds that the proof sustains the appellant's complaint, she will be able to recover compensatory and punitive damages against the appellee as a result of the assault and battery, including elements of emotional distress. Therefore, it would be inappropriate to allow her to also recover damages based on the tort of outrage. *See Bankhead v. City of Tacoma*, 23 Wash.App. 631, 638, 597

5. The appellant has also properly pled punitive damages in her complaint. As we said in Syllabus Point 3 of *Peck v. Bez*, 129 W.Va. 247, 40 S.E.2d 1 (1946): "In an action to recover for personal injuries alleged to have resulted in an assault, a declaration which alleges that the assault was wilful, intentional, and unlawful will support a recovery of punitive damages." Here, the appellant's complaint that the defen-dant acted wilfully, wantonly, and intentionally is sufficient to allow recovery of punitive damages. An award of punitive damages may be appropriate if the jury finds "wilfulness, wantonness, malice, or other like aggravation" in the appellee's actions toward the appellant. Syl. Pt. 1, *O'Brien v. Snodgrass*, 123 W.Va. 483, 16 S.E.2d 621 (1941). *See also* Syl. Pt. 5, *Harless*, 169 W.Va. 673, 289 S.E.2d 692.

P.2d 920, 925 (1979) (dismissal of independent claim for infliction of emotional distress proper where assault and battery claimed); *Todd v. South Carolina Farm Bureau Mut. Ins.*, 283 S.C. 155, 173, 321 S.E.2d 602, 613 (S.C.Ct.App.1984), *quashed in part on other grounds*, 287 S.C. 190, 336 S.E.2d 472 (1985) (tort of outrage not a replacement for existing tort actions).

Because the evidence presented by the appellant shows a proper case for jury determination on the assault and battery cause of action, we reverse the trial court's order directing a verdict in the appellee's favor and we remand this case to the Circuit Court of Taylor County.

Reversed and remanded.