499 S.E.2d 41

Elizabeth Ann STUMP, James Leo Burton, Ronnie Lee McClure, Joel Malcolm McClure, Linda Faye Adkins, Barbara Gay Pennington, Sesco McClure, Jr., Richard Keith McClure, Daniel James Burton, Lena Mae Lovejoy, Marilyn Sue Burton, Appellants,

v.

ASHLAND, INC., Wiley and Nowlan Ashland Oil Agents, Inc., and Sandra Turner, Administrator of the Estate of Ernest Eugene Marcum, Appellees.

Nos. 23818, 23819, 23820, 23821, 23822, 23823, 23824, 23825, 23826, 23827 and 23828.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1997.

Decided Nov. 24, 1997.

one in such a situation receive notice of the grievance, nor any mandatory duty to intervene.

W. Coleman Allen, Jr., Allen, Allen, Allen & Allen, Richmond, VA and Thomas V. Flaherty, Flaherty, Sensabaugh & Bonasso Charleston, for the Appellants.

Marc E. Williams, Robert L. Massie, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Ashland.

Anita Casey, Mark A. Eck, Robert P. Martin, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Wiley & Nowlan and Turner.

MAYNARD, Justice:

The appellants, eleven family members of decedents Sesco and Lena McClure,[1] appeal the February 9, 1996 order of the Circuit Court of Logan County granting the motion for summary judgment of the appellees, Ashland Inc. (Ashland), Wiley and Nowlan Ashland Oil Agents, Inc. (Wiley and Nowlan), and Sandra Turner, Administrator of the Estate of Ernest Eugene Marcum (Sandra Turner), in negligent infliction of emotional distress claims stemming from the deaths of Sesco and Lena McClure. The decedents were killed when a tanker truck carrying gasoline fuel crashed into their home and ignited a fire. The court dismissed the appellants' claims because it found that the contemporaneous observation requirement of a negligent infliction of emotional harm claim articulated by this Court in *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992) was not met.

Ashland cross-assigns as error the court's February 9, 1996 order inasmuch as it denied Ashland's motion for dismissal of the appellant's punitive damages claim. Ashland also cross-assigns as error the court's supplemental order of July 29, 1996, holding that the claims for negligent infliction of emotional distress were not duplicative of the claims asserted in the wrongful death suits.

For the reasons that follow, we reverse the circuit court's February 9, 1996 order dismissing the appellants' claims. We affirm both the February 9, 1996 order inasmuch as it denied Ashland's motion for dismissal of the appellants' punitive damages claim and the July 29, 1996 order.

## I.

## FACTS

The tragic events in this case occurred in the early morning hours of May 11, 1993 when a tanker truck owned by Wiley and Nowlan and driven by Ernest Eugene Marcum[2] crashed into the home of Sesco and Lena McClure on Dairy Road near West Hamlin, West Virginia. Upon impact, the

---

1. Eleven suits for negligent infliction of emotional distress were filed below. The eleven suits were consolidated for purposes of discovery and were decided together in the circuit court, including the entry of identical final orders. This Court granted petitions for appeal in the eleven cases.

2. In their complaints, the appellants allege that Ernest Eugene Marcum was acting as "the agent, servant and/or employee" of Wiley and Nowlan Ashland Oil Agents, Inc. and Ashland Inc. They further allege that Wiley and Nowlan was acting within the scope of its agency with Ashland Inc.

tanker truck exploded and set fire to the McClure home.[3]

Three of the appellants, Sue Burton, daughter of Sesco and Lena McClure, her husband, James Leo Burton, and their son, Daniel James Burton, lived next door to the McClure home. Upon being awakened by the tanker truck collision and the fire next door, they fled their home which was also consumed by the fire. Despite desperate attempts, the Burtons were unable to rescue Sesco and Lena McClure due to the terrific heat of the flames.

James Leo Burton subsequently raced to a neighbor's house where he phoned the other eight children of Sesco and Lena McClure who lived nearby. These eight arrived almost immediately at the scene of the fire and were greeted by chaos and confusion as their parents' home continued to burn and firemen battled the blaze. Several of the children made repeated attempts to approach their parents' home, only to be turned back by police and firemen.[4] Unable to rescue their parents, the children finally huddled together across the road where they were forced to watch helplessly with the awful knowledge that the same heat and flames preventing a rescue were also consuming the flesh of their parents.

Several hours later, the fire now reduced to smoldering embers, a fireman approached the band of family members and informed them that their parents' bodies had been found, and that they were dead. The body of Sesco McClure was found in the front bedroom of their home, lying face down along the back wall of the room. The body of Lena McClure was found at the rear of their home, just outside, facing away from the house.

The eleven family members who were at the scene of the fire filed claims alleging negligent infliction of emotional distress. Appellees Wiley and Nowlan, and Sandra Turner moved for summary judgment alleging, *inter alia*, that the appellants were not present at the scene of the accident as it occurred, nor did they witness it, and thus failed to state a claim for negligent infliction of emotional distress under *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992). Ashland also moved for summary judgment incorporating the motion for summary judgment of Wiley and Nowlan and Sandra Turner. In addition, Ashland contended that the appellants' emotional distress claims were duplicative of two wrongful death actions filed by the appellants.[5] Further, Ashland moved to have the appellants' claim for punitive damages dismissed, maintaining that punitive damages are not recoverable as a matter of law in West Virginia for claims of infliction of emotional distress.

By order of February 9, 1996, the circuit court denied Ashland's motion for summary judgment finding that the appellants may recover punitive damages subject to appropriate proof. However, the court granted the appellees' motion based on the fact that the appellants did not have a contemporaneous observation of the accident as required by *Heldreth, supra.* Specifically, the circuit court found in part:

> On the issue of the contemporaneous observation of the accident, sufficient to allow the plaintiffs a recovery under the requirements of *Heldreth v. Mars* (sic ), the Court is of the opinion that the location of the Plaintiffs, at the time of the accident, is controlling. The Court does find that none of the witnesses to the fire could

---

**3.** Ernest Eugene Marcum was killed in the accident.

**4.** In his affidavit, Richard Keith McClure states,
I tried to get to my parents' home, to help them, but was stopped by a fireman, who restrained me. A policeman then joined us, and led me back to his car. We got inside the police car, and the officer kept talking to me, trying to calm me down, and to keep me from going to the house.
According to the affidavit of Sesco McClure Jr.,
We then went down through the bottom, looking for our parents. We tried to get the

firemen to help us look through the backyard and throughout the bottom, but they refused, and kept insisting that we leave.... Because we were so persistent, the fireman finally turned a fire hose on us to drive us away from the area.

**5.** According to Ashland, Rodney L. McClure and Marilyn Sue Burton, the co-administrators of the estates of Lena and Sesco McClure, have filed wrongful death actions on behalf of all of the beneficiaries.

see the injury to their parents and grand-parents because of the fire. The Court does further find that eight of the Plaintiffs voluntarily came to the scene after receiving a phone call. The Court does further find that the plaintiffs are attempting to extend the Court's holding in *Heldreth v. Mars (sic)* further than intended and does specifically find that coming to the scene of an accident, after the fact, is not sufficient to establish a separate cause of action for the negligent infliction of emotional distress.

By supplemental order of July 29, 1996, the circuit court found that the claims for negligent infliction of emotional distress were not duplicative of the claims asserted in the wrongful death suits.

## II.

## DISCUSSION

### Standard of Review

Initially, we note that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Finally, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). With this in mind, we now review the issues before us.

### A.

### *Contemporaneous Sensory Observation*

As noted in the circuit court's order, the determinative issue in this case concerns the interpretation of *Heldreth v. Marrs,* 188 W.Va. 481, 425 S.E.2d 157 (1992), this Court's definitive statement of the necessary elements of a claim of negligent infliction of emotional distress. The underlying facts of *Heldreth* were as follows. Mr. and Mrs Heldreth were walking to their automobile in a department store parking lot. Mr. Heldreth preceded Mrs. Heldreth to the automobile and was placing a package into the trunk when Mrs. Heldreth was struck by another vehicle. Upon being struck, Mrs. Heldreth screamed, was thrown into the air, and then to the ground. Mr. Heldreth heard his wife scream and then realized that she had been struck by a car. Mr. Heldreth was subsequently hospitalized for suffering a heart attack.

The primary issues in *Heldreth* were,

> whether a plaintiff should be allowed to recover for the negligent infliction of emotional distress from witnessing or having some sensory observation of a person closely related to the plaintiff, suffer critical injury or death as a result of the defendant's negligence, and if so, what factors should be considered in determining whether it was reasonably foreseeable.

*Heldreth,* 188 W.Va. at 484, 425 S.E.2d at 160.

This Court answered the first question in the affirmative, concluding, in part, in Syllabus Point 1:

> A defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable.

In Syllabus Point 2, the Court stated:

> A plaintiff's right to recover for the negligent infliction of emotional distress, after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence test of foreseeability. A plaintiff is re-

quired to prove under this test that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death. In determining whether the serious emotional injury suffered by a plaintiff in a negligent infliction of emotional distress action was reasonably foreseeable to the defendant, the following factors must be evaluated: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers *serious* emotional distress.

In its discussion of the location of the plaintiff at the time of the accident, this Court adopted the reasoning of the Supreme Court of California in *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989):

> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury. Greater certainty and a more reasonable limit on the exposure to liability for negligent conduct is possible by limiting the right to recover for negligently caused emotional distress to plaintiffs who personally and *contemporaneously perceive the injury-producing event and its traumatic consequences.*

*Heldreth*, 188 W.Va. at 488, 425 S.E.2d at 164 (*quoting Thing*, 257 Cal.Rptr. at 879, 771 P.2d at 828) (emphasis added). This Court likewise concluded that a plaintiff in a negligent infliction of emotional distress action must be present at the scene of the injury-producing event at the time it occurs and must be aware that it is causing injury to the victim. In other words, the plaintiff must have a "sensory observation" of the injury to

or the death of the victim. *Heldreth*, 188 W.Va. at 484, n. 2, 425 S.E.2d at 160, n. 2.

In this case, therefore, we must decide whether the plaintiffs, who did not actually witness the tanker truck collide with the decedents' home but arrived to witness the resulting fire, meet the sensory observation requirement of *Heldreth*.

The circuit court based its order awarding summary judgment to the appellees on three findings. First, the court found that "none of the witnesses to the fire could see the injury to their parents and grandparents because of the fire." Second, "eight of the plaintiffs voluntarily came to the scene after receiving a phone call." Finally, "coming to the scene of an accident, after the fact, is not sufficient to establish a separate cause of action for the negligent infliction of emotional distress."

In response, the appellants contend that the clear language of *Heldreth* does not mandate that the appellants actually *see* the injury being inflicted upon a close relative, but it is sufficient that there be "some sensory observation" of the death or injury. *Citing Heldreth*, 188 W.Va. at 484, 425 S.E.2d at 160. The appellants note that, particularly in cases of fire, the flames are likely to conceal the victim from the view of witnesses. Further, one who observes a fire that causes the death of a loved one is still likely to experience severe and traumatic emotional distress. In addition, the appellants assert that the injury-producing event is actually the fire itself, and not the preceding negligent act, i.e. the collision of the tanker truck into the decedents' home. Finally, the appellants maintain that the circuit court's reliance on the voluntariness of the appellants' presence at the scene of the fire was error, in that it imposes an element that is not a part of this Court's analysis of negligent infliction of emotional distress claims.

We are persuaded by the appellants reasoning. In their briefs to this Court, the appellants cite several negligent infliction of emotional distress cases involving death or injury by fire. We find the following cases instructive on the issue before us.

*Wilks v. Hom*, 2 Cal.App.4th 1264, 3 Cal. Rptr.2d 803 (1992) involved an explosion and

fire that occurred in a residence rented by the plaintiff and her three young daughters. On the morning of the explosion, the plaintiff's boyfriend had hooked up the house's propane system to a propane stove. Later that day, one of the plaintiff's daughters pulled a vacuum cleaner plug out of the electrical socket, setting off an explosion that blew the plaintiff and one of her daughters out of the house and trapped the other two daughters inside the burning home. One of the daughters trapped inside the house was killed and the other was severely burned. Although the plaintiff was aware that the explosion and fire likely harmed her two daughters, she could not visually witness the infliction of the injury.

In deciding whether the trial court had properly instructed the jury on awarding damages for emotional distress to the plaintiff bystander under these circumstances, the California Court of Appeals carefully reviewed the limits of bystander liability for negligent infliction of emotional distress claims both before and in the aftermath of *Thing v. La Chusa, supra.* The court determined that the language of the rule in *Thing* that the plaintiff "is present at the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim," does not mandate that the plaintiff must "visually perceive the injury while it is being inflicted." *Wilks,* 2 Cal.App.4th at 1271, 3 Cal.Rptr.2d at 807. The court concluded that "it is not necessary that a plaintiff bystander actually have witnessed the infliction of injury to her child, provided that the plaintiff was at the scene of the accident and was sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child." *Id.*

In *In re Air Crash Disaster Near Cerritos, Cal.,* 967 F.2d 1421 (9th Cir.1992), the plaintiff left her husband and children at home one morning to buy breakfast food at a nearby grocery store. Returning from the store, the plaintiff "saw, heard, and felt a big explosion." *Id.,* 967 F.2d at 1422. Upon arriving home, the plaintiff discovered that an Aeromexico passenger airliner had crashed into her home which was now engulfed in flames. The plaintiff's family was killed in the explo-

sion and fire. The plaintiff brought an action for negligent infliction of emotional distress. The court was guided by the reasoning in *Wilks, supra,* in concluding that the plaintiff did meet the second requirement of the *Thing* rule in that she was sensorially aware that injury was being inflicted on her family. Concerning whether the plaintiff was present at the scene of the injury-producing event, the court stated:

> The district court did not err by concluding that Estrada was at the scene of the injury-producing event.... Estrada saw the fire consuming the home in which she had just left her family. *The injury-producing event was the fire.* Since Estrada was present at the scene of the fire, she was present at the scene of the injury-producing event.
>
> The district court correctly found that Estrada knew her husband and children were being injured by the fire.... Estrada left her house briefly to go to the store, leaving her husband in his pajamas in the living room and her children asleep in bed. There could be very little doubt in Estrada's mind that her husband and children were in the house that she saw engulfed in flames.
>
> In holding that Estrada may recover for the negligent infliction of emotional distress, we are mindful of the California Supreme Court's determination that "it is appropriate to restrict recovery to those persons who will suffer an emotional impact beyond the impact that can be anticipated whenever one learns that a relative is injured, or dies." *Thing,* 257 Cal.Rptr. at 880, 771 P.2d at 829. Estrada's emotional distress did not stem merely from the knowledge that her husband and children had died. Estrada understandably experienced great emotional distress as a result of watching helplessly as flames engulfed her home and burned her family to death.

*In Re Air,* 967 F.2d at 1425 (emphasis added).

We note that in their briefs to this Court, the appellees attempt to distinguish *Wilks* and *In re Air* from the present case. First, they emphasize that in *Wilks* the plaintiff

was present in the home at the time of the explosion and was actually blown out the front door. Likewise, in *Estrada*, the plaintiff actually "saw, heard, and felt a big explosion." According to the appellees, this is how the contemporaneous sensory observation requirement was met in those cases. Also, they assert that in both cases the plaintiffs were certain of the victims' location immediately prior to the explosions.

We note the distinguishing facts in *Wilks*, but believe that the court's carefully reasoned conclusion that the plaintiff need not actually witness the injury to the victim is certainly applicable to the facts in the present case. Also, despite the fact that the plaintiff in *In re Air* had a sensory observation of the explosion, it was the court's clearly stated determination that the injury-producing event was the fire that was dispositive. Further, we believe that the appellants in the case at hand possessed a reasonable degree of certainty that the decedents were inside the burning house. Although several of the appellants searched the immediate area for their parents upon arriving at the scene, their failure to find them could only lead to the conclusion that their parents were trapped in the fire.

■ We hold, therefore, that in a negligent infliction of emotional distress action in which fire causes serious injury or death to the victim, in order for the plaintiff to meet the sensory observation requirement articulated by this Court in Syllabus Point 2 of *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992), it is not necessary that the plaintiff actually witness the injury being inflicted to the victim by the fire, provided the plaintiff is at the scene of the fire and is sensorially aware, in some important way, of the fire and the necessarily inflicted injury to the victim. We believe that the language used by this Court in *Heldreth* merits such a conclusion. When this Court selected the proper language in *Heldreth* with which to describe the observation requirement, it stated that "a plaintiff who witnesses *or* has a sensory observation of a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligence should be allowed to bring an action

for negligent infliction of emotional distress." *Id.*, 188 W.Va. at 485, 425 S.E.2d at 161(emphasis added). Indeed, the very language of the requirement itself demands only that the plaintiff "is aware" that the injury-producing event is causing serious injury or death to the victim. Also, as noted by the appellants, in cases involving fire the flames are likely to hide the victims from the view of those present at the scene. To disallow recovery to plaintiffs in such cases merely because they did not actually view the injury being inflicted on the bodies of the victims defies reason and common sense.

■ In addition, we find that the appellants were present at the scene of the injury-producing event because here the injury-producing event was the fire. The appellees argue that, because the collision, impact, and subsequent explosion of the tanker truck in the decedents' home was the injury-producing event, the appellants arrived to merely view the aftermath of the event. In support of their argument, the appellees cite several cases holding that arrival at the scene after the occurrence and resulting injury is an insufficient basis for recovery. *See Fife v. Astenius*, 232 Cal.App.3d 1090, 284 Cal.Rptr. 16 (1991) (holding arrival at scene of accident "within seconds" of hearing impact is insufficient); *Hathaway v. Superior Court*, 112 Cal. App.3d 728, 169 Cal.Rptr. 435 (1980) (holding arrival at site minutes after electrocution and subsequent observation of son's resulting injuries is insufficient); *Parsons v. Superior Court*, 81 Cal.App.3d 506, 146 Cal.Rptr. 495 (1978) (holding arrival at accident scene "before dust had settled" is insufficient); *Fineran v. Pickett*, 465 N.W.2d 662 (Iowa 1991) (holding arrival at scene of bicycle/car accident two minutes after collision and observation of resulting injuries is insufficient). These cases concern automobile accidents or similar events which happen instantaneously. In the case of fire, however, the injury-producing event is not instantaneous, but takes place over a protracted period of time. We hold, therefore, that in a negligent infliction of emotional distress action involving serious injury or death by fire, in order for the plaintiff to meet the second requirement articulated by this Court in Syllabus Point 2 of

*Heldreth v. Marrs,* 188 W.Va. 481, 425 S.E.2d 157 (1992) that the plaintiff is present at the injury-producing event at the time it occurs, the plaintiff's presence during the preceding negligent act that caused the fire is not necessary. It is sufficient that the plaintiff is present at the fire because it is actually the fire that is the injury-producing event.

We pause here to emphasize that we are not in any way enlarging this Court's holding in *Heldreth.*[6] Instead, we are simply acknowledging the unique circumstances of cases involving serious injury or death as the result of fire, and we limit our holding here to such cases.

For the reasons stated above, we find our holding here consistent with the rule set forth in *Heldreth.* There this Court explained the reason for allowing a plaintiff to recover for the negligent infliction of emotional distress by quoting the New Jersey Supreme Court in *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521, 526 (1980):

> No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure. The law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed.

*Heldreth,* 188 W.Va. at 484, 425 S.E.2d at 160.

Our law would be cruel and less than adequate if it did not recognize the severe degree of emotional harm certain to be suffered by those who must watch helplessly while fire is causing injury or death to a loved one.

■ Finally, we conclude our discussion of this issue by noting that we agree with the appellants that whether they "voluntarily" came to the scene of the accident is plainly not relevant to the specific requirements contained in *Heldreth.* Clearly, upon hearing that a close relative is in a life-threatening situation, it would be the natural reaction of a person to rush to the scene in order to affect a rescue or aid the injured victim. Our law does not punish a plaintiff for such behavior.

## B.

### Duplicative Claims

■ We now proceed to discuss the cross-assignments of error raised by appellee Ashland Inc. First, Ashland claims that the circuit court erred in holding that the claims for negligent infliction of emotional distress are not duplicative of the claims asserted in the wrongful death suits. The gravamen of Ashland's argument here is that, because our wrongful death statute provides for the awarding of damages for "mental anguish," to allow the appellants to collect damages for both wrongful death claims and negligent infliction of emotional distress claims would confer a double recovery for the same injury in violation of this Court's holding in Syllabus Point 7 of *Harless v. First National Bank,* 169 W.Va. 673, 289 S.E.2d 692 (1982):

> It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories.

Ashland also relies on *Criss v. Criss,* 177 W.Va. 749, 356 S.E.2d 620 (1987) for support. There, a wife instituted an action against her estranged husband, alleging that he entered her residence and sexually assaulted her. She sought recovery based on two legal theories. First, that her husband wilfully, wantonly and intentionally assaulted and battered her. Second, that her husband's conduct was outrageous and that he intentionally inflicted emotional distress upon her. This Court held that "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emo-

---

**6.** An Amicus Curiae Brief was filed with this Court urging us to adopt the rule articulated by the Wisconsin Supreme Court in *Bowen v. Lumbermens Mutual Casualty Company,* 183 Wis.2d 627, 658, 517 N.W.2d 432, 445 (1994) in which that court allowed a claim for emotional trauma arising out of the plaintiff's witnessing of the "gruesome aftermath" of an accident. Also, the appellants exhort us to further define the second requirement of *Heldreth* to include those plaintiffs who witness the immediate aftermath of an accident. We decline so to do.

tional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery, where both claims arise from the same event." Syllabus Point 4, *Criss, supra.*

In the present case, however, we find that the separate claims for wrongful death and negligent infliction of emotional distress are clearly not duplicative because they provide recovery for separate and distinct injuries. W.Va.Code § 55–7–6(c)(1)(A) (1992) provides, in part, that in a wrongful death action "[t]he verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent[.]" In a negligent infliction of emotional distress claim the plaintiff must prove that he experienced serious emotional distress, "after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct." *Heldreth,* 188 W.Va. at 485, 425 S.E.2d at 161.

█ In a wrongful death action, damages result from the decedent's death alone, and are designed to provide for recovery "from the typical type of grief suffered by all who lose a loved one." *R.D. v. W.H.,* 875 P.2d 26, 32 (Wyo.1994) (where the court found that the appellant's intentional and negligent infliction of emotional distress claims "clearly were not parasitic to the wrongful death claims even though they arose out of the same circumstances.")[7]

█ The tort of negligent infliction of emotional distress, on the other hand, concerns a completely different injury. *See Cimino v. Milford Keg, Inc.,* 385 Mass. 323, 334, 431 N.E.2d 920, 927 (1982) ("Since emotional distress is a wrong to the plaintiff distinct from that done [to the decedent] and the statutory beneficiaries of the decedent, it is not a duplicative remedy and is not 'preempted' by the wrongful death statute"); and *Dawson v. Hill & Hill Truck Lines,* 206 Mont. 325, 671 P.2d 589, 593 (1983) ("A negligent infliction action ... compensates for mental distress from having *witnessed* an accident. The mental distress for which recovery can be sought [in a wrongful death action] is limited to mental anguish, sorrow or grief resulting from the death. The two actions are distinct and separate.") The essence of the tort of negligent infliction of emotional distress

> is the shock caused by the perception of an especially horrendous event. It is more than the shock one suffers when he learns of the death or injury of a child, sibling or parent over the phone, from a witness, or at the hospital. It is more than bad news.

*Gates v. Richardson,* 719 P.2d 193, 199 (Wyo. 1986) (citation omitted).

The kind of shock required results from a plaintiff witnessing or having "a sensory observation of a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligence." *Heldreth,* 188 W.Va. at 485, 425 S.E.2d at 157. The tort provides, therefore, "for recovery in special circumstances where plaintiffs suffer from extreme shocks." *R.D.,* 875 P.2d at 32.

---

**7.** This Court found few cases that directly confronted this issue. In *Purty v. Kennebec Valley Medical Center,* 551 A.2d 858 (Me.1988), the Supreme Judicial Court of Maine held that an emotional distress action was separate and independent from Maine's statutory wrongful death action. Following that decision, the state legislature amended the wrongful death statute in order to reverse the court's decision in *Purty. See Krempels v. Mazyck,* 868 F.Supp. 355 (D.Me. 1994); 18–A M.R.S.A. § 2–804 (1995). In their briefs to this Court, the appellants list several cases from other jurisdictions in which wrongful death claims and emotional distress claims arising from the same event were allowed without comment: *Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038 (Alaska 1986); *Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562

P.2d 1022 (1977); *Millican and Clayton v. Wolfe,* 701 P.2d 107 (Colo.App.1985); *Clohessy v. Bachelor,* 237 Conn. 31, 675 A.2d 852 (1996); *Littleton v. OB–GYN Associates of Albany, P.C.,* 194 Ga.App. 787, 391 S.E.2d 806 (1990); *Villamil v. Elmhurst Memorial Hospital,* 175 Ill. App.3d 668, 125 Ill.Dec. 105, 529 N.E.2d 1181 (1988); *Wilhoite v. Cobb,* 761 S.W.2d 625 (Ky. Ct.App.1988); *LaCour v. Safeway Ins. Co.,* 676 So.2d 761 (La.App. 3 Cir.1996); *Gustafson v. Faris,* 67 Mich.App. 363, 241 N.W.2d 208 (1976); *State v. Eaton,* 101 Nev. 705, 710 P.2d 1370 (1985); *Carey v. Lovett,* 132 N.J. 44, 622 A.2d 1279 (1993); *Folz v. State,* 110 N.M. 457, 797 P.2d 246 (1990); *Gardner v. Gardner,* 334 N.C. 662, 435 S.E.2d 324 (1993); *Neff v. Lasso,* 382 Pa.Super. 487, 555 A.2d 1304 (1989).

We hold, therefore, that an action for death by wrongful act brought pursuant to W.Va. Code § 55–7–5 (1931) and W.Va.Code § 55–7–6 (1992), in which W.Va.Code § 55–7–6(c)(1)(A) provides damages for "mental anguish," is not duplicative of an action for negligent infliction of emotional distress because each action provides for recovery of damages for a different injury. Therefore, both an action for death by wrongful act and a negligent infliction of emotional distress action may arise from the same event.

## C.

### Punitive Damages

■ In its second cross-assignment of error, Ashland asserts that the circuit court wrongly failed to dismiss the appellants' punitive damages claim.[8] Ashland argues that claims for punitive damages are not recoverable as a matter of law in this case, and bases its argument on *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994) where this Court did not allow punitive damages in addition to compensatory damages for the tort of outrageous conduct where there was no physical injury, holding that "damages awarded for tort of outrageous conduct are essentially punitive damages." Syllabus Point 8, in part, *Dzinglski, supra.* According to Ashland, this principle applies with equal force to a negligent infliction of emotional distress claim where reckless conduct is alleged, in that "the injury suffered and the type of compensatory damages awarded are identical, and are punitive in nature." [9]

■ We disagree. This Court first recognized the tort of outrage in syllabus point 6 of *Harless, supra:* "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the

other results from it, for such bodily harm." "[T]he hallmark of this tort . . . is intentional and outrageous conduct." *Harless*, 169 W.Va. at 695, 289 S.E.2d at 704. Such conduct must be,

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995) (*quoting* Restatement (Second) of Torts § 46(1) Comment (d) (1965)). Even though the focus is on the defendant's conduct, the plaintiff must still prove severe emotional distress. "[B]ut in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Id.*, at 651, n. 11, 461 S.E.2d at 157, n. 11 (*quoting* Restatement (Second) of Torts § 46 Comment (j)). Because of this strong relationship between the defendant's conduct and the severity of the plaintiff's emotional distress in a claim based on the tort of outrage, this Court determined "that expert testimony is not required in every case to prove the causation and severity elements for intentional infliction of emotional distress." *Id.*, at 653, 461 S.E.2d at 159. In *Dzinglski*, this Court recognized that in a tort of outrage claim in which there is no physical trauma, all damages are essentially punitive damages given the significance of the defendant's conduct, both in supporting a tort of outrage claim and in assessing the severity of the plaintiff's emotional distress.

■ In a claim for negligent infliction of emotional distress, on the other hand, the

---

8. In their complaints, the appellants allege that the conduct of the appellees resulting in the deaths of Lena and Sesco McClure "was willful, wanton, reckless, egregiously tortious, and evinced reckless disregard of the safety" of the decedents, and request punitive damages in addition to compensatory damages.

9. In its brief to this Court, Ashland cites to no authorities from other jurisdictions in support of its position on this issue. Our research likewise revealed no cases from other jurisdictions that prohibit punitive damages as a matter of law in claims for the negligent infliction of emotional distress.

focus is on the seriousness of the emotional distress suffered by the plaintiff. The seriousness of this distress must be proved through the use of medical and psychiatric evidence. *See Heldreth, supra.* Once the plaintiff proves the serious nature of the emotional distress, as well as the other factors outlined in *Heldreth,* he or she can be compensated according to the degree of the injury. This determination of damages is independent of the defendant's conduct once, of course, the defendant's negligence has been established. If a plaintiff can further show wanton, wilful, or reckless conduct by the defendant, the jury may assess punitive damages. *See* Syllabus Point 1, *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), *overruled on other grounds, Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991). We hold, therefore, that upon appropriate proof, both compensatory and punitive damages may be awarded to a plaintiff in an action for negligent infliction of emotional distress.

**III.**

**CONCLUSION**

In conclusion, after careful review of the briefs, the record, and oral argument, we conclude that the circuit court improperly granted summary judgment to the appellees. We further find that the cross-assignments of error raised by appellee Ashland Inc. are without merit. Accordingly, based on the foregoing analysis, we reverse and remand this cause for further proceedings consistent with this opinion.

Reversed and Remanded.