UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NANCY A. GARDNER, Individually
and as Administratrix of the Estate
of George A. Gardner,
           *Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS AND
COMPANY, INCORPORATED;
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, a Cigna
Company,

           *Defendants-Appellees,*

           and

TRAVELERS INSURANCE COMPANY,
           *Defendant.*

No. 00-1834

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Elizabeth V. Hallannan, Senior District Judge.
(CA-96-423-2)

Argued: March 2, 2001

Decided: April 16, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Anthony J. Majestro, MASTERS & TAYLOR, L.C., Charleston, West Virginia, for Appellant. Charles Leslie Woody, SPILMAN, THOMAS & BATTLE, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** Paula Durst Gillis, Eric W. Iskra, Michael H. Spencer, SPILMAN, THOMAS & BATTLE, P.L.L.C., Charleston, West Virginia; Robert H. Sweeney, Jr., JENKINS FENSTERMAKER, P.L.L.C., Huntington, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Nancy Gardner appeals the district court's grant of summary judgment to appellees DuPont and Connecticut General in her action seeking damages for breach of contract and various torts arising from appellees' refusal to pay the full amount of her insurance claim. For the reasons set forth below, we affirm.

I.

George Gardner ("George"), appellant's deceased husband, worked for DuPont for nine years prior to retiring in 1989. While employed by DuPont, George participated in two life insurance programs — a noncontributory plan funded entirely by DuPont, and an optional contributory plan that provides supplemental coverage paid for jointly by DuPont and the employee. Coverage through the noncontributory plan continues automatically after an employee leaves DuPont. Under the contributory plan, however, coverage for an employee who retires with less than fifteen years of service continues only if the employee contacts the insurer, Connecticut General, and assumes responsibility for the entire premium.

When George retired, DuPont informed him of his right to convert to an individual policy with Connecticut General. A form that he received at his exit interview explained that he had "non-contributory [coverage] for life" and that "contributory life can be converted by contacting [the insurance company] directly." J.A. 223. Furthermore, a "Benefits Check List for Terminations" noted that his "Contributory Life Insurance" coverage was "dropped" as of February 28, 1989, the date of his retirement. J.A. 222.

George never contacted Connecticut General to convert the contributory plan to an individual policy. However, in late 1992 — more than three years after George's retirement — DuPont began deducting $50.40 for life insurance from his monthly disability checks, even though he was ineligible for contributory coverage. DuPont continued to deduct money for life insurance from his disability checks through 1993.

Hoping to assign his life insurance as collateral for a mortgage on a new home, George contacted DuPont in late 1993 to inquire about the value of his benefits. A clerk in DuPont's benefits department sent him a computer printout stating that he had $25,000 in noncontributory coverage and $84,000 in contributory coverage, less $3,000 previously paid, for a total of $106,000. George listed the life insurance as collateral on his mortgage application, and the Gardners moved into their new home in March 1994.

When George died shortly thereafter, appellant contacted DuPont to collect the life insurance proceeds, which she intended to use to pay off the mortgage. DuPont paid appellant $25,000 — the amount of George's noncontributory coverage — but refused to pay the $84,000 under the contributory policy, claiming that George was ineligible to participate in the contributory plan and that the deductions from his disability checks over the previous year and a half had resulted from computer error. DuPont refunded the deductions of $806.40.

Appellant sued DuPont and Connecticut General, asserting various contract and tort claims under West Virginia law. The district court held that the state-law claims were preempted by the Employee Retirement Income Security Act (ERISA), and we reversed. *Gardner*

v. *E.I. DuPont de Nemours and Co.*, 165 F.3d 18 (4th Cir. 1998) (unpublished). On remand, the district court granted summary judgment to appellees on all of appellant's state-law claims.

## II.

Appellant first argues that the district court erred by granting summary judgment to appellees on her claim of reasonable expectation of insurance coverage. Appellant bases her argument on *Keller* v. *First National Bank*, 403 S.E.2d 424 (W. Va. 1991), in which the Supreme Court of Appeals of West Virginia explained that "once an insurer creates a reasonable expectation of insurance coverage, the insurer must give the coverage or promptly notify the insured of the denial." *Id*. at 427. In appellant's view, appellees created a reasonable expectation of insurance coverage by deducting premiums from George's disability checks and by informing him that he had $106,000 in coverage when he contacted DuPont shortly before his death. Like the district court, we hold that George did not have a reasonable expectation of insurance because he failed to follow the unambiguous requirements for coverage, of which he was informed upon his retirement.

Under West Virginia law, "the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." *Riffe* v. *Home Finders Assoc., Inc.*, 517 S.E.2d 313, 318-19 (W. Va. 1999). Here, the plain language of the contributory insurance policy makes clear that an employee who retires with less than fifteen years of service to DuPont will not continue to receive contributory coverage unless the contributory policy is converted to an individual life insurance plan by contacting the insurer within thirty-one days of retirement:

> If you have less than 15 years of service, your coverage will be canceled at the time your employment terminates . . . .
>
> . . .
>
> During [the 31-day period after retirement], you may convert the insurance to an individual policy (but not term insurance) without having to prove your good health.

To convert, write to the insurance company directly and
make your first premium payment during the 31-day period.

J.A. 253-54.

Furthermore, not only are the terms of the contributory insurance
policy unambiguous, but the record also establishes that DuPont
informed George about those terms and the procedure for continuing
coverage after retirement. A benefits checklist reviewed with George
at his exit interview indicates that he was told his contributory life
insurance coverage would cease to be effective on February 28, 1989,
the date of his retirement, and that he would be left with only non-
contributory coverage unless he contacted the insurer and assumed
sole responsibility for the premiums on the contributory policy. J.A.
222-23. Nevertheless, despite being given the opportunity, he never
contacted Connecticut General to convert the group policy to an indi-
vidual one. Having failed to follow the unambiguous requirements of
which he was informed at the time of his retirement, George could not
have had a reasonable expectation of insurance coverage.[1] We there-
fore affirm the district court's grant of summary judgment on this claim.[2]

### III.

Appellant next argues that the district court erred in granting sum-

---

[1]Indeed, the information provided to George at his exit interview dis-
tinguishes this case from *Keller*. There, the court noted that although the
claimant did not follow the correct procedures for obtaining insurance,
her expectation of coverage was reasonable because "the record fail[ed]
to show that [she] knew the application procedures and that failure to fol-
low them would mean no credit life insurance." *Keller*, 403 S.E.2d at
430. Here, in contrast, appellees provided George with precisely the
information that the defendant in *Keller* failed to disclose.

[2]Because a plaintiff's reasonable expectation of insurance coverage is
an element of an estoppel claim against an insurer, we also affirm the
district court's grant of summary judgment to appellees on appellant's
claim of estoppel. *See Potesta* v. *United States Fidelity & Guaranty Co.*,
504 S.E.2d 135, 136 (W. Va. 1998) (explaining that an estoppel claim
requires a plaintiff to show that the insurer created a reasonable belief
that it would provide insurance coverage to the plaintiff).

mary judgment to appellees on her claim of breach of contract. We agree with the district court that no reasonable jury could find the existence of a contract between DuPont and appellant based on the uncontroverted facts. *Cf. Cook* v. *Heck's, Inc.*, 342 S.E.2d 453, 457 (W. Va. 1986) (explaining that the trial court should direct a verdict for the defendant when the jury could not find the existence of a contract from the evidence when viewed in the light most favorable to the plaintiff).

Under West Virginia law, a contract of insurance requires the mutual assent of the parties to all essential elements of an insurance policy — "the subject matter of the insurance, the risk insured against, the commencement and the period of the risk undertaken by the insurer, the amount of the insurance, and the premium and the time of its payment." *Knapp* v. *Independence Life and Accident Ins. Co.*, 118 S.E.2d 631, 636 (W. Va. 1961). Mutuality of assent requires an offer and an acceptance, both of which "may be by word, act or conduct *that evince [sic] the intention of the parties to contract*." *Bailey* v. *Sewell Coal Co.*, 437 S.E.2d 448, 450-51 (W. Va. 1993) (emphasis added).

In appellant's view, "[DuPont's] computer and Mr. Gardner demonstrated mutual assent" to the essential elements of an insurance contract when the computer deducted insurance premiums from George's disability checks and George failed to challenge the deductions. Appellant's Br. at 17. We disagree. It is uncontroverted that the deduction of insurance premiums from George's disability benefit checks resulted solely from a clerical mistake following DuPont's implementation of a new computer system. No reasonable jury could conclude, based on what was indisputably a computer error, that DuPont *intended* to contract with George, nor could a jury determine that such an error alone evinced a meeting of the minds as to essential terms of an insurance contract, like the period and amount of coverage.[3]

---

[3]Because there is no genuine dispute that the deduction of premiums resulted from an inadvertent clerical error, we also affirm the district court's grant of summary judgment to appellees on the claim of fraud. *See White* v. *National Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991) (explaining that under West Virginia law, fraud must be proven by clear and convincing evidence and "is not deducible from facts and circumstances which would be equally consistent with honest intentions").

Accordingly, we affirm the district court's grant of summary judgment on appellant's claim of breach of contract.

## IV.

Finally, appellant argues that the district court erroneously granted summary judgment to appellees on her claim of negligent infliction of emotional distress stemming from appellees' refusal to pay the contributory life insurance proceeds. While we agree with appellant that the district court applied an incorrect legal standard in evaluating her claim, we conclude that appellees nonetheless are entitled to summary judgment under West Virginia law.

## A.

The district court relied on *Stump* v. *Ashland, Inc.*, 499 S.E.2d 41 (W. Va. 1997), which concluded that:

> [A] defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable.

*Id.* at 46 (internal citations omitted). The district court granted summary judgment to appellees because appellant had produced no evidence that she "witnessed or observed [George] suffer a critical injury or death as a result of [appellees'] negligence." J.A. 135.

However, contrary to the district court's apparent belief, West Virginia law does not limit claims for negligent infliction of emotional distress to situations where, as in *Stump*, a plaintiff witnesses a close relation suffer physical injury or death. *See*, *e.g.*, *Marlin* v. *Bill Rich Constr., Inc.*, 482 S.E.2d 620, 637 (W. Va. 1997) (plaintiff may recover for negligent infliction of emotional distress based upon the plaintiff's fear of contracting a disease); *Bramer* v. *Dotson*, 437 S.E.2d 773, 774-75 (W. Va. 1993) (plaintiff may recover after being

erroneously diagnosed with AIDS). Nor, as appellees argue, is physical injury to the plaintiff required to maintain a cause of action based on emotional distress, though physical injury is highly probative of the severity and genuineness of the distress alleged. Rather, "an individual may recover for the negligent infliction of emotional distress absent physical injury" — either to the plaintiff or to the plaintiff's relation — "upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious." *Marlin*, 482 S.E.2d at 637.

B.

Despite applying the wrong legal standard, however, the district court was ultimately correct to grant summary judgment to appellees. For, in relaxing the traditional requirement of physical injury to a plaintiff who alleges negligent infliction of emotional distress, the Supreme Court of Appeals of West Virginia has insisted that the plaintiff establish facts sufficient to guarantee that "the emotional distress is undoubtedly real and serious" and that "the claim is not spurious." *Id*. Further, a plaintiff may recover for negligent infliction of emotional distress only if the distress was reasonably foreseeable. *See id.*; *Heldreth* v. *Marrs*, 425 S.E.2d 157, 165-67 (W. Va. 1992). Appellant fails to meet the stringent standard for maintaining a cause of action for negligent infliction of emotional distress in the absence of physical injury to the plaintiff. The record is devoid of any medical or psychiatric confirmation of appellant's mental distress. *Cf. Marlin*, 482 S.E.2d at 638 (seriousness of alleged emotional distress may be proven through physical injury or psychiatric evidence). Instead, appellant's only evidence of emotional injury is her own bald assertion that appellees' actions have caused her "distress, embarrassment, humiliation, inconvenience, aggravation, and pain of conscious [sic] and heart." J.A. 37. Such assertions, standing alone, are insufficient to guarantee that "the emotional distress is undoubtedly real and serious" and that the "claim is not spurious." *Marlin*, 482 S.E.2d at 637.

Further, even if appellant had proven the seriousness and authenticity of her emotional distress claim to the degree required by West Virginia law, we believe that no jury could find that such distress was a reasonably foreseeable result of appellees' conduct. Insurance companies routinely deny benefits where the entitlement to coverage is disputed, yet we are aware of no case where the denial of benefits

resulted in mental distress to the claimant so severe that the company was held liable in tort. Indeed, we cannot say that "a reasonable person . . . would be unable to cope adequately with the mental distress engendered by" so common an occurrence as a dispute with an insurance company over the amount of a claim. *Heldreth*, 425 S.E.2d at 165. Mindful that emotional distress claims in the absence of physical injury to the plaintiff should "obviously be infrequent," *Marlin*, 482 S.E.2d at 637, we affirm the district court's grant of summary judgment to appellees on this issue.[4]

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

[4]Because there is no evidence that appellees intended to cause appellant emotional distress, we also affirm the district court's grant of summary judgment to appellees on the claims of intentional infliction of emotional distress and the tort of outrage. *See Marlin*, 482 S.E.2d at 639 ("No mere showing of neglect will satisfy the element of intent necessary to an action for intentional infliction of emotional distress."); *Harless* v. *First Nat'l Bank*, 289 S.E.2d 692, 704 (W. Va. 1982) (explaining that the tort of outrage requires that the defendant have the "specific purpose of inflicting emotional distress").