967 F.2d 1421
 In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, ON
AUGUST 31, 1986.
Theresa ESTRADA, individually, as Parent, Guardian, and Best
Friend of Alejandro Estrada, a minor, and as Personal
Representative of the Estate of Frank Estrada, Sr.,
deceased; Javier Estrada, deceased, and Anjelica Estrada,
deceased, Plaintiffs-Appellees,
v.
AERONAVES DE MEXICO, SA., dba Aeromexico, Defendant,
and
United States of America, Defendant-Appellant.
 No. 91-55464.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 2, 1992.
Decided June 30, 1992.
As Amended Aug. 7, 1992.
 
 Barbara B. O'Malley, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.
 Joseph T. Cook, Speiser, Krause, Madole & Cook, Irvine, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: HUG, PREGERSON, and POOLE, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 In this case against the United States under the Federal Tort Claims Act, we are required to decide whether, in applying California law, the award to Theresa Estrada of damages for negligent infliction of emotional distress can be sustained. An Aeromexico airliner crashed into the Estrada home causing the home to be engulfed in flames; Theresa Estrada's husband and two children perished in the home. She did not witness the plane crash into her home, in which she had just left her family, but returned minutes later to witness the home consumed in flames. We hold that recovery is appropriate because Estrada was present at the scene of the fire and was aware that the fire was injuring her family. We affirm the judgment.
 
 I.
 
 2
 The district court had jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. We have appellate jurisdiction under 28 U.S.C. § 1291. The crash occurred in California and all of the actions upon which liability is based against the United States took place in California; thus, California tort law applies in determining that liability, 28 U.S.C. § 1346(b). We review the district court's findings of fact for clear error, United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), and review the district court's application of California law to the facts de novo. In Re McLinn, 739 F.2d 1395, 1400 (9th Cir.1984) (en banc).
 
 II.
 
 3
 On the morning of August 31, 1986, Theresa Estrada left her home to buy some ham and other breakfast food at a nearby grocery store. When Estrada left for the store, her husband, Frank Estrada, was in his pajamas reading the newspaper in the living room. Three of the Estradas' children, Alex, Javier, and Anjelica, were still in bed.
 
 
 4
 Returning from the store, Estrada saw, heard, and felt a big explosion. Although Estrada did not know it at the time, an Aeromexico passenger airliner had just crashed into her home after colliding with a privately owned plane flown by William Kramer. Within minutes, Estrada had maneuvered her way through the debris and had arrived at her home to find it engulfed in flames. She was surrounded by burning homes, cars, and debris.
 
 
 5
 Estrada brought this action against the United States, Aeromexico, and the Kramer Estate for wrongful death of the Estrada family and for negligent infliction of emotional distress on Theresa Estrada. The district court held that Aeromexico was not responsible for the accident, and that William Kramer and the United States were each fifty percent responsible for the damages. The United States' responsibility was due to the air traffic controllers' failure to detect the private aircraft's intrusion into restricted airspace as well as their failure to give a traffic advisory to the Aeromexico flight.
 
 
 6
 In a separate trial on damages, the district court awarded the Estrada family a total of $868,263 in economic damages and $4.7 million in non-economic damages, including $1 million for the negligent infliction of emotional distress suffered by Theresa Estrada. Having been found only fifty percent responsible for the damages, the United States is liable for only fifty percent of the non-economic damages because California limits a defendant's tort liability to several liability for non-economic damages. See Cal.Civil Code § 1431.2(a) (West 1982 & Supp.1992). The United States appeals only the award of the $500,000 damages against the United States for negligent infliction of emotional distress.
 
 III.
 
 7
 In Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), the California Supreme Court modified the law regarding negligent infliction of emotional distress. The court recognized that "[c]lose relatives suffer serious, even debilitating, emotional reactions to the injury, death, serious illness, and evident suffering of loved ones. These reactions occur regardless of the cause of the loved one's illness, injury, or death." Id. 257 Cal.Rptr. at 880, 771 P.2d at 829. Therefore, the court concluded, "it is appropriate to restrict recovery to those persons who will suffer an emotional impact beyond the impact that can be anticipated whenever one learns that a relative is injured, or dies...." Id. Determining that prior cases had created uncertainty and permitted liability out of proportion to culpability for negligent acts, Thing established new guidelines for determining when a plaintiff may recover for the negligent infliction of emotional distress arising from injury to another. The court concluded that
 
 
 8
 [A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress--a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.
 
 
 9
 Id. at 880-81, 771 P.2d at 829-30 (footnotes omitted).
 
 
 10
 Estrada clearly satisfies the first and third requirements. The second requirement is the one at issue here. The district court concluded that Estrada was at the scene of the injury-producing event and found that she was aware that her family was being injured. The Government argues that Estrada was neither present at the scene of the injury-producing event nor aware that it was causing injury to her family. Therefore, the Government contends, Estrada is not entitled to a judgment for negligent infliction of emotional distress.
 
 
 11
 In Thing, the court held that the plaintiff could not recover damages for negligent infliction of emotional distress under the fact situation presented in that case. Id. at 881, 771 P.2d at 830. The plaintiff mother's son was injured when the defendant's car struck him. Although the mother was nearby, she did not see or hear the accident. She was not aware of her son's injury until her daughter told her that he had been hit by a car. Id. at 866, 771 P.2d at 815.
 
 
 12
 The Thing court criticized dicta from Krouse v. Graham, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977), that concluded that persons who were not present at the accident scene could recover damages for the emotional distress they suffered when they were told of the injury or when they later arrived at the scene. Thing, 257 Cal.Rptr. at 872, 771 P.2d at 821.
 
 
 13
 In Krouse, the plaintiff did not see his wife get hit by the defendant's car. However, he knew her position an instant before the impact, observed the defendant's car approaching her at a high speed on a collision course, and realized that the defendant's car must have struck her. Krouse, 137 Cal.Rptr. at 872, 562 P.2d at 1031. The court concluded that the plaintiff was a percipient witness. Id.
 
 
 14
 Although the Thing court disapproved of some of the dicta in Krouse, it "did not indicate disapproval ... of the holding in Krouse that the plaintiff need not visually perceive the injury while it is being inflicted." Wilks v. Hom, 2 Cal.App. 4th 1264, 3 Cal.Rptr.2d 803, 807 (1992). In Wilks, the California Court of Appeal confirmed that "it is not necessary that a plaintiff bystander actually have witnessed the infliction of injury to her child, provided that the plaintiff was at the scene of the accident and was sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child." Id. 3 Cal.Rptr.2d at 807. See also Golstein v. Superior Court, 223 Cal.App.3d 1415, 273 Cal.Rptr. 270, 278 (1990) (Thing requires plaintiffs to "experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury").
 
 
 15
 In Wilks, the plaintiff mother, Wilks, did not see or hear her daughter being injured. Wilks had just finished vacuuming when she called to her daughter, Virginia, to pull the cord out of the socket in Virginia's room. Virginia said, "Yes, Mom," and pulled the plug. When Virginia pulled the plug, there was an immediate explosion. Wilks's other daughter, Jessica, screamed to Virginia to plug the cord back into the socket. Wilks was blown out of the house as she saw the explosion come from Virginia's room. Id. 3 Cal.Rptr.2d at 804, 807. Virginia died from her injuries and Jessica was severely burned. The court concluded that Wilks must have known at the time of the explosion that both Jessica and Virginia were experiencing injury, and held that the evidence was "sufficient to establish the requirement that she personally and contemporaneously perceived the injury-producing event and its traumatic consequences." Wilks, 3 Cal.Rptr.2d at 808.
 
 
 16
 In Fife v. Astenius, 232 Cal.App.3d 1090, 284 Cal.Rptr. 16, 18 (1991), the California Court of Appeal, relying on Thing, made it clear that "[r]ecovery is precluded when a plaintiff perceives an accident but is unaware of injury to a family member until minutes or even seconds later." In Fife, Meghan was injured when the truck in which she was a passenger collided with a car just behind her house. Her parents and brothers heard the crash and saw debris flying. None of the family members saw the accident. Meghan's father and brothers immediately went outside and discovered that she had been hurt. One of the boys then told his mother that Meghan had been injured. Id. 284 Cal.Rptr. at 17. The court denied recovery, holding that "the Fifes, even if considered present at the scene, cannot recover because they did not know Meghan was involved in the accident at the time they heard the collision." Id. 284 Cal.Rptr. at 18.
 
 
 17
 Estrada's case does not neatly match the facts in any of these cases because the injury-producing event was not instantaneous. The district court concluded that the "disaster was still occurring while Mrs. Estrada was driving to her home and after she arrived to see her house in flames." The court also found that Mrs. Estrada "knew that her husband and three children were inside the home in immediate risk of death or serious bodily injury."
 
 
 18
 The district court did not err by concluding that Estrada was at the scene of the injury-producing event. Unlike the plaintiff in Thing, who did not see or hear the car accident, Estrada saw the fire consuming the home in which she had just left her family. The injury-producing event was the fire. Since Estrada was present at the scene of the fire, she was present at the scene of the injury-producing event.
 
 
 19
 The district court correctly found that Estrada knew her husband and children were being injured by the fire. Estrada's case is very different from Thing and Fife, in which the plaintiffs did not know until the accidents were over that their children were the victims of the accidents. Estrada's experience is similar to the situations in Wilks and Krouse, in which the plaintiffs saw or heard their relatives shortly before the injury-producing events, and therefore were aware that their relatives were being injured. Estrada left her house briefly to go to the store, leaving her husband in his pajamas in the living room and her children asleep in bed. There could be very little doubt in Estrada's mind that her husband and children were in the house that she saw engulfed in flames.
 
 
 20
 In holding that Estrada may recover for the negligent infliction of emotional distress, we are mindful of the California Supreme Court's determination that "it is appropriate to restrict recovery to those persons who will suffer an emotional impact beyond the impact that can be anticipated whenever one learns that a relative is injured, or dies." Thing, 257 Cal.Rptr. at 880, 771 P.2d at 829. Estrada's emotional distress did not stem merely from the knowledge that her husband and children had died. Estrada understandably experienced great emotional distress as a result of watching helplessly as flames engulfed her home and burned her family to death.
 
 
 21
 AFFIRMED.