742 A.2d 591 (1999)
327 N.J. Super. 6
Ronald K. VASILIK, Individually and as Administrator Ad Prosequendum of the Estate of Mark R. Vasilik, deceased, Plaintiff-Respondent/Cross-Appellant,
v.
Joel FEDERBUSH, M.D., Linda Van Doren, R.N. and St. Mary's Hospital, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1999.
Decided December 28, 1999.
*592 Robert Baum, Hachensack, for defendants-appellants/cross-respondents (Hein, Smith, Berezin, Maloof, Davidson & Jacobs, attorneys; Mr. Baum, of counsel and on the brief).
Anthony J. Macri, Denville, for plaintiff-respondent/cross-appellant.
Before Judges LANDAU and KIMMELMAN.
KIMMELMAN, J.A.D.
Plaintiff, individually and as administrator ad prosequendum of the estate of his late son, recovered a verdict of $425,000 against defendants for their failure to provide appropriate evaluation and hospitalization of his son. Plaintiff's son, a heroin addict who was experiencing withdrawal symptoms, committed suicide some fifteen hours after his hospital visit at defendant St. Mary's Hospital. Plaintiff's claim for damages for emotional distress was dismissed by the court prior to trial by way of partial summary judgment. Defendants' motion for a new trial was denied. Defendants appeal; plaintiff cross-appeals. We affirm the trial court's judgment.
Plaintiff's twenty-one year-old son, who had been doing menial jobs in California, was at his father's home in Clifton on April 25, 1994, seeking help in overcoming his heroin addiction. On April 26, 1994, the son was acting noticeably withdrawn and began vomiting. Plaintiff took his son to a local hospital to be evaluated for drug withdrawal symptoms. The son tested negative for the presence of drugs in his blood and he was discharged on the same day with instructions to attend a drug rehabilitation program.
The next afternoon, April 27, 1994, plaintiff noticed that his son was not in his room, but he was able to locate him after a search by car. Unbeknownst to plaintiff at the time, his son had slashed his wrist with a kitchen knife and jumped out a bedroom window in unsuccessful attempts at suicide. That evening, after his son went to sleep, and after plaintiff became aware that his son had attempted suicide, plaintiff called the office of a drug rehabilitation program for help. He was advised that, because of his son's attempts at suicide, his son could not be admitted to the rehabilitation program. Plaintiff was advised that when his son awoke, plaintiff should take him to defendant St. Mary's Hospital Crisis Center.
On April 28,1994, plaintiff took his son to the Crisis Center and brought with him the knife his son had used to attempt suicide. They were sent to the hospital's emergency room. Plaintiff told the emergency room nurse that his son had attempted suicide. The son's wrist was bandaged, and plaintiff and his son then proceeded to the Crisis Center. There, the son was interviewed by defendant Linda *593 Van Doren, a nurse, and by defendant Joel Federbush, a doctor. After about forty minutes, plaintiff was admitted to the interview room. Dr. Federbush and nurse Van Doren then advised plaintiff that his son was not suicidal but was instead "acting out" and looking for attention. Hospitalization was not offered and plaintiff was advised to follow up with a drug rehabilitation program. The hospitalization records contain no information as to voluntary hospitalization being recommended or offered, nor do the records reflect that the son refused any offer of voluntary hospitalization.
Plaintiff and his son returned to plaintiff's home, and the son went to bed. Plaintiff checked his son every couple of hours during the night, but when he checked at about 6:00 a.m. his son was gone. Plaintiff telephoned the home of his ex-wife and was relieved to learn that his son was there. Plaintiff agreed to pick him up before the mother left for work. A few minutes later, however, the mother called and told plaintiff that their son had left her house. Plaintiff got into his car and immediately went to look for his son. While searching for his son, plaintiff noticed flashing lights on nearby Route 80. When he went to investigate, he saw paramedics administering CPR to his son. He began screaming and was restrained by the police. He was advised that his son had jumped in front of a dump truck. After staying at the scene for some minutes, plaintiff observed the paramedics placing a blanket over his son's body.
Plaintiff instituted suit against defendants alleging negligence, malpractice, and negligent infliction of emotional distress.
At trial, defendant Dr. Federbush testified that voluntary admission to the hospital would be automatically discussed as part of the treatment plan at the Crisis Center. Interrogatory answers by defendants indicated that the son was offered voluntary admission, but that the son had declined the offer. At trial, Dr. Federbush testified that the son had declined voluntary admission to the hospital. However, in a deposition prior to trial, he had testified that he could not recall whether the son had declined voluntary admission or not. On cross-examination, Dr. Federbush conceded that he had never specifically recommended hospitalization to the son.
Defendant nurse Van Doren testified that voluntary hospitalization was explained as an option to plaintiff and his son, but was not recommended. That option, if in fact offered, was not recorded in the written hospital record. Plaintiff did not ask that his son be admitted to the hospital.
Plaintiff's medical experts testified that (1) because of the son's two suicide attempts, he definitely needed hospitalization; (2) additional steps should have been taken prior to ruling out major depression; (3) in all probability, the son would not have killed himself had he been hospitalized earlier and put on medications; and (4) his son's prior suicide attempts should have been taken more seriously. They also opined that the failure to hospitalize the son and keep him under close supervision was a deviation from accepted standards of medical practice. Defendants' expert testified to the contrary, but conceded on cross-examination that the son had at least three high-risk factors for suicide.
In short, the trial largely turned on the contest between the experts. The jury, by its verdict, accepted the opinions of plaintiff's experts. We have thoroughly reviewed the record and perceive no reason to disturb the jury's verdict. It was clearly not against the weight of the evidence or a miscarriage of justice.
Defendants' claim of immunity, pursuant to N.J.S.A. 30:4-27.7, was not raised at or before trial. Rather, it was raised only on their motion for a new trial. The trial judge properly ruled that defendants had waived this defense by failure to assert the same in their answer, as required by R. 4:6-2, or in a motion before trial. Lahue v. Pio Costa, 263 N.J.Super. 575, 597-98, 623 A.2d 775 (App.Div.), certif. denied, 134 N.J. 477, 634 A.2d 524 (1993); Buteas v. Raritan Lodge No. 61 F. & *594 A.M., 248 N.J.Super. 351, 363, 591 A.2d 623 (App.Div.1991).
N.J.S.A. 30:4-27.7 affords immunity from civil liability where a person is involuntarily committed because of mental illness, or where hospital staff persons acting in good faith take reasonable steps to assess the mental health of an individual who may be in need of such confinement. Ziemba v. Riverview Med. Ctr., 275 N.J.Super. 293, 300, 645 A.2d 1276 (App. Div.1994). In addressing the applicability of the statute, the trial judge observed that the question of an involuntary commitment to the hospital had not been pursued and, therefore, was not an issue in the case. The judge noted that the jury had already found that defendants did not take reasonable steps to assess the mental stability of the son and that they failed to recommend his voluntary commitment. Hence, the immunity statute was inapplicable. We agree with the judge's rationale.
Finally, we address the partial summary judgment dismissing plaintiff's claim for emotional distress damages.
In Portee v. Jaffee, 84 N.J. 88, 91, 417 A.2d 521 (1980), a mother witnessed her young child suffer and die in an elevator accident caused by defendant's negligence. The Supreme Court stated that a cause of action for negligent infliction of emotional distress could lie provided four elements were proven:
(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate familiar relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.
[Id. at 101, 417 A.2d 521.]
In Frame v. Kothari, 115 N.J. 638, 649, 560 A.2d 675 (1989), the Supreme Court modified its holding in Portee to include emotional distress resulting from physician malpractice. According to the Court:
In an appropriate case, if a family member witnesses the physician's malpractice, observes the effect of the malpractice on the patient, and immediately connects the malpractice with the injury, that may be sufficient to allow recovery for the family member's emotional distress.
[Ibid.]
In 1995, however, the Supreme Court further clarified the requirements for maintaining a claim for infliction of emotional distress based on malpractice. Gendek v. Poblete, 139 N.J. 291, 302, 654 A.2d 970 (1995). In Gendek the Court stated that, in order to conform to public policy principles, the Court would
insist that an immediate, close and clear involvement or connection be present between a person suffering emotional distress and the conduct of the professional healthcare providers whose fault has contributed to the grave or fatal injuries of a related loved one.
[Ibid.]
Here, it is undisputed that the tragic suicide did not come immediately after the misdiagnosis, but rather on the next day, some fifteen hours later. We are satisfied that fifteen hours does not meet Gendek's requirement of an "immediate... connection[.]" Ibid.
In addition, plaintiff did not witness the occurrence of the tragic event, but instead happened upon the scene some minutes later and sadly witnessed the unsuccessful resuscitation efforts. Under the circumstances, the trial judge was correct in dismissing the emotional distress claim.
The complained of rulings and the jury verdict are in all respects affirmed.