NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0186-13T1

RICHARD LITWIN, Administrator
Ad Prosequendum for the ESTATE
OF LOUIS M. ACERRA, and
RICHARD LITWIN, Individually,

     Plaintiff-Appellant,

v.

WHIRLPOOL CORPORATION, as
successor in interest to
MAYTAG CORPORATION,

     Defendants,

and

A&E FACTORY SERVICES, LLC;
MICHAEL S. CECERO, individually,
and as agents, servants,
and/or employees of A&E
FACTORY SERVICES, LLC,

     Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| June 11, 2014 |
| APPELLATE DIVISION |

Argued January 8, 2014 – Decided June 11, 2014

Before Judges Sapp-Peterson, Lihotz and Maven.

On appeal from an Interlocutory Order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4479-09.

Jacqueline DeCarlo argued the cause for appellant (Hobbie, Corrigan & Bertucio, P.C., attorneys; Ms. DeCarlo, of counsel and on the briefs).

Paul E. White (Sugarman, Rogers, Barshak & Cohen, P.C.) of the Massachusetts bar, admitted pro hac vice, and Martin L. Sisselman argued the cause for respondents (Sisselman & Schwartz, LLP, and Mr. White, attorneys; Andrew R. Levin (Sugarman, Rogers, Barshak & Cohen, P.C.) of the Massachusetts bar, admitted pro hac vice, Mr. White, and Mr. Sisselman, on the brief).

The opinion of the court was delivered by

SAPP-PETERSON, P.J.A.D.

We consider this interlocutory appeal following the Supreme Court's reversal of our denial of interlocutory review of the trial court order granting partial summary judgment to defendants A&E Factory Services, LLC (A&E) and Michael S. Cecero, who repaired plaintiff Richard Litwin's Whirlpool dishwasher. The motion judge granted summary judgment, finding plaintiff failed to satisfy the observation prong necessary to assert a Portee[1] claim and also failed to establish a prima facie case of severe emotional distress. We now reverse.

I.

On June 12, 2009, around midnight, plaintiff and his stepson, Louis Acerra, were at home and asleep when they were awakened by the sound of a smoke detector alerting them to a fire downstairs. They sought refuge in plaintiff's bedroom after observing smoke rising from downstairs. Once in the

_____

[1] Portee v. Jaffee, 84 N.J. 88 (1980).

bedroom, they covered the door with clothing to prevent the smoke from seeping into the bedroom. Acerra subsequently ran out into the hallway, which was filled with smoke and flames. Plaintiff called out to Acerra, but when he did not respond, plaintiff believed he had escaped and proceeded to climb out the second floor window and hung onto the window ledge until rescue personnel arrived and brought a ladder to assist him.

Once on the ground and realizing that Acerra had not escaped, he attempted to re-enter the house, but firefighters restrained him. Shortly thereafter, he observed rescue personnel bringing his son out of the house. Acerra's body was still burning, smoldering and smoking, with skin melting from his bones. Although Acerra survived the fire, he sustained third-degree burns to nearly 56% of his body. Plaintiff was his primary caretaker for the next three years, while he underwent multiple skin grafting and related procedures. Acerra died on January 17, 2012, after undergoing another procedure related to his injuries.

Plaintiff commenced treatment with psychologists Dr. Robbin J. Kay, in June 2010, and with Dr. Theodore J. Batlas in March 2011. Both doctors diagnosed plaintiff as suffering from post-traumatic stress disorder (PTSD) stemming from the fire. Dr. Kay reported that plaintiff's symptoms were triggered by

smelling fire or smoke and he experienced flashbacks of the fire. Dr. Batlas reported that plaintiff was an "eyewitness to his son's catastrophic burn injuries and was essentially the only person involved in caretaking for his son when he returned [home] . . . to rehabilitate following his hospitalization." He also opined that plaintiff continued to "suffer from flashbacks related to the fire and subsequent related events . . . [and] suffer[s] tremendous guilt at not being able to have done more to rescue/save his son both in the fire and from his subsequent death."

Prior to the fire, the United States Product Safety Commission announced a recall campaign to address a potential fire hazard involving several models of Maytag and Jenn-Air dishwashing units, including the model plaintiff owned. Whirlpool acknowledged at least 135 reports of fires directly related to the recall campaign. Plaintiff received a letter regarding a recall on his dishwasher; he called the 800 number on the letter and was informed a repair kit would be sent to him. Plaintiff refused the repair kit and requested that a repair technician come to his home. In July 2007, Whirlpool sent Cecero, an A&E employee, to service the dishwasher.

Following the fire, plaintiff filed a complaint, individually and on behalf of Acerra for injuries they sustained

A-0186-13T1

as a result of defendants' alleged negligence. Among the claims asserted against defendants was a bystander or <u>Portee</u> claim. Defendants filed a motion seeking partial summary judgment dismissing plaintiff's <u>Portee</u> claim. Whirlpool settled plaintiff's claims prior to the return date of the motion and withdrew its motion. A&E and Cecero, however, proceeded with the motion.

In seeking summary judgment, defendants urged that an essential element of a <u>Portee</u> claim requires the party asserting the claim to have directly witnessed the injury-producing event. Additionally, defendants contended the claimed severe emotional distress must be causally related to direct observation of the injury-producing event and, in addition, plaintiff failed to demonstrate that he sustained extreme or severe emotional distress attributed solely to witnessing Acerra being injured.

In granting summary judgment to defendants, the trial court, in a written opinion, rejected plaintiff's argument that a <u>Portee</u> claim does not require direct observation when the party asserting the claim has witnessed the injury-producing event through sensory perception. The court stated plaintiff's argument was an unwarranted expansion of the "narrow holding in <u>Portee</u> that direct sensory and contemporaneous observation be occasioned by <u>immediate perception</u>." The court concluded

plaintiff "did not observe the serious injury to his stepson because he did not see his stepson until after the injuries had already occurred and thus fail[ed] to satisfy the observational prong under Portee." The court also found plaintiff failed to establish that his claimed severe emotional distress was "a direct result of having seen the injuries to his stepson take place."

Plaintiff moved for reconsideration, which the court denied. The present appeal followed.

On appeal plaintiff urges the trial court failed to abide by the fundamental principles governing summary judgment motions, that is, to accord all favorable inferences to him, and had it done so, the court would have found he established "the prima facie requirements of the observation prong of Portee [and] the prima facie requirements of the 'severe emotional distress' prong of Portee." We agree.

## II.

A trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46—2(c); see also Brill v. Guardian Life

Ins. Co. of Am., 142 N.J. 520, 529—30 (1995). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46—2(c). If the evidence submitted on the motion "'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Brill, supra, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)).

When a party appeals from a trial court order granting or denying a summary judgment motion, we "'employ the same standard [of review] that governs the trial court.'" Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (quoting Busciglio v. DellaFave, 366 N.J. Super. 135, 139 (App. Div. 2004)). However, we review legal conclusions de novo. Henry, supra, 204 N.J. at 330.

### III.

In Portee, supra, 84 N.J. at 101, our Court recognized a cause of action for damages to a bystander as a result of witnessing an injury-producing event to one with whom the bystander has an intimate or familial relationship. Ibid. In

order to assert a <u>Portee</u> claim, a plaintiff must establish four elements:

> (1) The death or serious physical injury of another caused by defendant's negligence;
>
> (2) A marital or intimate, familial relationship between plaintiff and the injured person;
>
> (3) Observation of the death or injury at the scene of the accident; and
>
> (4) Resulting severe emotional distress.
>
> [<u>Ibid.</u>]

The third and fourth elements are implicated in this appeal.

A. <u>Observation</u>

"The viability of <u>Portee</u> claims depends only on whether the plaintiff has had a sensory, contemporaneous perception of an injury that was sustained by a spouse or close family member, irrespective of the distance from which that perception arises." <u>Jablonowska v. Suther</u>, 195 <u>N.J.</u> 91, 107 (2008) (noting that a <u>Portee</u> claim "is not dependent on the aggrieved person's presence within the zone of danger created by the defendant's negligent conduct"). Where a plaintiff "observe[s] the kind of result that is associated with the aftermath of an accident, such as bleeding, traumatic injury, and cries of pain," the observation prong is satisfied. <u>Frame v. Kothari</u>, 115 <u>N.J.</u> 638, 643 (1989). Satisfaction of the observation prong is also found

where the plaintiff witnesses "the victim when the injury is inflicted or immediately thereafter." Id. at 644. However, "[m]erely being on the scene may not be enough. The injury must be one that is susceptible to immediate sensory perception, and the plaintiff must witness the victim when the injury is inflicted or immediately thereafter." Ibid.

Here, the facts, when viewed most favorably to plaintiff, establish that plaintiff was inside his home when he and Acerra were awakened by the alarm and observed the smoke rising up to the second floor. Plaintiff felt the warmth of the doorknob as he attempted to look for Acerra, who had left the bedroom. Fearing what was happening on the other side of the door, because the doorknob of his bedroom felt warm, he did not leave the bedroom. Once outside, however, plaintiff realized Acerra had not escaped and knew he was still inside the burning home. Plaintiff observed his son's body still smoldering with peeling skin, while rescuers brought him outside. Moreover, plaintiff presented videotaped testimony from Acerra's physicians, who described, in graphic detail, the catastrophic burn injuries they observed, not contemporaneously to the fire, but thereafter. A jury could reasonably infer from their testimony the magnitude of emotional distress plaintiff experienced because he had been in the fire, was an eyewitness to his son

still in the burning house, and observed Acerra's smoldering body being removed from the burning house.

We are convinced that under the <u>Brill</u> standard, plaintiff observed the kind of result that is associated with the aftermath of traumatic injury and that it was not necessary for him to have been inside his home observing his son's body burning in order to satisfy the observation prong supporting a <u>Portee</u> claim. Further, as Judge Louis F. Locascio reasoned in <u>Ortiz v. John D. Pittenger, Builder, Inc.</u>:

> [F]ire cases are unique because "the flames are likely to hide the victims from the view of those present at the scene. To disallow recovery to plaintiffs in such cases merely because they did not actually view the injury being inflicted on the bodies of the victims <u>defies reason and common sense</u>."
>
> [382 <u>N.J. Super.</u> 552, 561 (Law Div. 2004) (quoting <u>Stump v. Ashland, Inc.</u>, 499 <u>S.E.</u>2d 41, 49 (1997)) (emphasis added in the original).]

We find the motion judge's conclusion that the facts here were most analogous to the facts in <u>Vasilik v. Federbush</u>, 327 <u>N.J. Super.</u> 6 (App Div. 1999), misplaced. In <u>Vasilik</u> we found the plaintiff father did not meet the observation prong under <u>Portee</u> because he arrived at the scene after his son deliberately jumped in front of a dump truck, committing suicide. <u>Id.</u> at 9. We concluded the plaintiff's observations of the rescue personnel attempting to resuscitate his son did

not meet the observation prong.  Id. at 13.  In the present matter, however, plaintiff did not arrive at the scene after the fact.  Rather, plaintiff was inside the home as it was being engulfed in flames; he knew that his son was still inside and witnessed his son's smoldering body being carried out of the home.

Plaintiff's experience is similar to the plaintiff grandmother in Ortiz, supra, whose granddaughter slipped from her grasp as they were attempting to escape their home during a fire.  382 N.J. Super. at 555.  The windows in the home exploded, startling the grandchild, who then separated from her grandmother's grasp, disappearing into the smoke and flames. Ibid.  Citing Wilks v. Hom, 3 Cal. Rptr. 2d 803, 807 (Ct. App. 1992), Judge Locascio interpreted the Portee observation prong to include being "'sensorially aware' of a family member who is within a burning building."  Id. at 563.  He reasoned:  "Just as the plaintiff in Portee watched the elevator crush her son, Ortiz and Cruz watched the house engulf Jasmine in flames.  The fire was 'the injury-producing event,' which plaintiffs observed."  Ibid.  Likewise, here, the fire was the "injury-producing event," which plaintiff observed both while in the home and after he escaped.  Consequently, the motion judge erred, as a matter of law, in concluding plaintiff failed to

establish a prima facie _Portee_ claim because he failed to actually observe Acerra burning inside of the home.

B.    Severe Emotional Distress

Turning to the fourth element of a _Portee_ claim, the resulting severe emotional distress, the motion judge acknowledged that post-traumatic stress "qualifies as emotional distress for purposes of a _Portee_ claim," but found the "singular reference in the third report of Litwin's expert causally relating Litwin's PTSD to the injuries plaintiff incurred by his stepson [wa]s not supported by the evidence in the record."  The judge explained:

> Litwin relies on this statement as evidence that his emotional distress did arise from the injuries to his stepson.  However, as [d]efendants correctly note, the portion of that diagnosis relating to "the effects of dealing with his son's trauma and recovery" is immaterial to the herein motion because those damages are not compensable under _Portee_.    Additionally, this singular reference in the third report of Litwin's expert causally relating Litwin's PTSD with the injuries incurred by his stepson is not supported by the evidence in the record.  The record in this matter is rife with examples of Litwin's current psychological trauma related to his own experience in the fire as well as the trauma related to caring for and dealing with the death of his stepson.    The record also indicates a substantial amount of pre-fire emotional distress suffered by Litwin.  However, there is no emotional distress causally linked directly to witnessing the injury to his stepson    and    Dr.    Batlas's    unsupported

12

> assertion is not enough to overcome the *Portee* threshold. As measured against the litany of evidence to the contrary, this matter does not present a sufficient disagreement to require submission to a jury but rather it is so one-sided that the Defendant must prevail as a matter of law. *Brill*, *supra*.

We agree the record contains significant evidence of pre-existing depression plaintiff suffered unrelated to witnessing his son being burned in the home. There is, however, nothing in the record indicating plaintiff previously suffered from PTSD. Consequently, viewed in the light most favorable to plaintiff, PTSD is a new injury.

It is defendants who raise the issue of plaintiff's pre-existing mental condition as a bar to recovery. Our Court, in *Scafidi v. Seiler*, 119 *N.J.* 93, 116, 119 (1990), a medical malpractice case, recognized the viability of a claim for recovery of damages in a negligence action where a plaintiff, in addition to the injuries claimed to be causally related to the negligent conduct, purportedly had pre-existing injuries. The Court, citing *Gaido v. Weiser*, 115 *N.J.* 310, 314-15 (1989) (Handler, J., concurring), another malpractice action, noted that *Gaido*

> involved a claim relating to a patient suffering from a preexistent condition—he was mentally ill and suicidal—whose death by suicide was allegedly caused in part by the medical malpractice of the defendant. The

13

> Court, in affirming the judgment of the Appellate Division, impliedly acknowledged the soundness of the Evers [v. Dolinger, 95 N.J. 399 (1989)] standard of causation [which] can be understood to entail the inquiry whether "the increased risk of suicide by [the patient] caused by [the defendant's] failure to provide adequate medical treatment was itself a substantial factor that contributed to [the patient's] suicide."
>
> [Ibid.]

Here, plaintiff did not plead an aggravation of a pre-existing mental condition in asserting his Portee claim. "When a plaintiff does not plead aggravation of pre-existing injuries, a comparative analysis is not required to make that demonstration." Davidson v. Slater, 189 N.J. 166, 170 (2007). Plaintiff was only required to raise a genuinely disputed issue of fact that he suffers from severe emotional distress, causally related to defendants' negligence, in order to submit his Portee claim to the jury. See Ibid. Plaintiff met his burden by presenting evidence he suffers from PTSD as a result of witnessing the injury-producing event.

Defendants, however, have raised a genuinely disputed factual issue as to whether plaintiff's claimed severe emotional distress is causally related to his witnessing the injury-producing event. They point to pre-existing mental health conditions and other injuries plaintiff may have separately

14                                                          A-0186-13T1

experienced as a result of the fire, which defendants claim are unrelated to plaintiff witnessing the claimed injury-producing event. This disputed issue as to causation is for the fact-finder to decide. Ibid.

In concluding here that there was "no emotional distress causally linked directly to witnessing the injury to his stepson[,]" the motion judge made a factual determination that was inappropriate in the context of this summary judgment record. When the facts are viewed in the light most favorable to plaintiff, Brill, supra, 142 N.J. at 540, plaintiff has raised genuinely disputed issues of fact that he suffered severe emotional distress as a result of witnessing his son being burned. This is not one of those unusual situations when no reasonable fact-finder could conclude that plaintiff's claimed severe emotional distress injury was caused by witnessing the injury-producing event. See Davidson, supra, 189, N.J. at 170.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION